This case presents a fundamental question about the burden of proof in an IDEA due process proceeding. The Department bore the burden of proving that it provided a fate, including that the assigned school could implement the IEP. During its own direct case, the Department called the school coordinator, who testified that the mandated 60-minute related service sessions would be difficult to meet, might need to be provided off-site through contractors, could be reduced following re-evaluation, and confirmed that the standard related service sessions in that school were 30-minute sessions, not the 60-minute sessions mandated by the student's IEP. This wasn't speculation by the parents who refused to visit the school. This was an admission by the Department's own witness that the school intended to modify the IEP rather than implement it as written. This was corroborated by the parent who testified that when he went to a virtual tour of the school for 30 minutes, he was told that his child would most likely be re-evaluated when she got to the school to determine whether she needed related service sessions off the school property, which wasn't part of the IEP. The IHO determined that the placement at I-Brain was not appropriate and that the equities didn't favor reimbursement, right? Yes. So, and the district court addressed that at the end of her opinion. Just at the start of your argument, if we agree as to those conclusions, we don't have to reach the question of whether a FAPE was provided, do we? Well, that part of the issue when the parent appealed prongs two and three, the SRO after finding, and in essence shifting the burden to the parent to prove that the school could implement the IEP, didn't address the substantive challenge to the IEP. Now, this is the case that you've heard before, the case that was certified to the New York State Court of Appeal. Yeah. Let me turn to that. If that issue, if that issue is preserved and not overwhelmed by other decisions, then obviously we have to hold until we see what the New York Court of Appeals tells us about that. There are two possible grounds for saying that that is not so. One, that you haven't challenged that in the IEP, and you say we don't need to challenge it because we won on that point. There's something a little ironical about that because you do challenge part of the IEP, of the grounds you were just making. So it's sort of funny if you're saying we're challenging a little one, but we're not challenging the big ones, but the big one is still there. Nonetheless, we might be able to say that since that issue was set back, said you should reconsider it, the IHO said you should reconsider it, it might be preserved. But then there's the question of whether there is enough of a finding on the school not being adequate, the question that the Chief Judge asked, and whether that is enough or whether we should say given everything else, the court didn't really focus on that, and if the issue of 6 v. 12 is there and a big issue, maybe we should wait and see what New York tells us, which may settle the issue, or send it back and say to the district court and the SRO ultimately, do you still feel that way about the court? I mean, just a question of what we do. Well, two things the district court did. One, the district court stated early on that the party that brings the petition has the burden of proof in the proceeding, and that's the parent here. That's incorrect. When the district court addressed Navarro-Carrillo, the district court didn't mention it was a summary order and said that the Second Circuit has held that the 12 to 1 to 4 placement is the most appropriate for the student. That is not what the court held. The court held in MG that that's what happened below, but never categorically held that that is the most appropriate placement. So not only do you have the issue that was certified to the Court of Appeals, but the in the question that she didn't really give the, she didn't review, the district court didn't review the case in a true de novo fashion and kind of skirted over those issues. With respect to the private school, the IHL treated attendance as a prong two and prong three issue. Typically, if the student is getting services at home, that becomes a prong three issue Should the student be reimbursed if the student's not going to school? But what the IHL did here was different. Was there a question whether there was a nurse available at the school? I'm just, yes or no? She raised that, but there was also the discussion. That was an element of the IEP, right? There was also the discussion that this Was that an element of the individualized education plan? That a nurse be present, or am I misremembering the record? The I-BRAIN plan? That was the plan, but the I-BRAIN plan isn't a plan that mandates services the same way that the IEP does for the state. I'm not saying that the student didn't need the services, but when the student wasn't in the school, the student was receiving telehealth services. I'm just saying that if I-BRAIN contracted to provide a nurse, and if it's also the case that the IEP contemplated if this were a public school, there would be a nurse provided, it would seem part of a prong to analysis as to whether the placement was appropriate, whether a nurse was in fact available. But it wasn't categorically the nurse was not available. The father testified that his daughter was in school two days a week, sometimes three days a week, and then at times when the nurse wasn't there, the student was home. So the student was going to the school, was at home because of health considerations, and there were times there was no nurse present. But the student received the services at home. There was a paraprofessional that went to the house. So rather than it being inappropriate, this issue, the IHO said there was no documentary evidence that established the student's attendance at I-BRAIN. Yet in a footnote said the student went to I-BRAIN at least 50% of the days during the school year. So it's not a case where there was no showing of the student going to the school. There were also attendance records after the fact, and there was a discussion about the records. I believe they were emailed to the IHO on December 8th. She didn't take them into- What is the standard on which we review this decision that the IAP was not adequate? That is, you're making arguments as to why we should have decided it the other way, but what is the standard on which we review that decision, which I may agree with you was not the core of what they were doing, but was a decision. So what is the standard on which we review it? I believe it's the same as the district court. It's a modified de novo review, and I say modified because if there's educational expertise involved, the court says you should defer to the SRO or IHO on the educational expertise. But that wasn't the case here. What the SRO did was reverse the IHO based on a legal definition of the sufficiency of evidence. When the SRO said in his decision on page 18 that there was no proof in the record that the school could not, the district could not implement the IAP, that was his standard. The question then is, given that New York switched the burden of proof on prong one, who would introduce evidence that the school could not implement the IAP? The district's not going to do that. And if you say it's the parent, then you're shifting the burden on prong one back to the parent, and that was error here. The SRO should have, should have affirmed the finding on prong one and then addressed the equities. Unlike the IHO, he didn't go on to address prong two and prong three, the SRO. So at the very least, the case should either be sent back to the district court to do that or the SRO, if you find that he improperly shifted that burden to the parent, to prove what the DOE is supposed to prove in the first instance, that the IAP can be implemented as written at the time it was created. Can I just, oh, sorry, go ahead. No, no, go ahead. Just on the waiver question on substantive, on adequacy. So you don't raise it in your brief to the SRO, and then the other side says you've waived it because you haven't raised it. Aren't you at least obligated in reply to either address it there or explain why you don't need to in order to preserve it? I would say, unlike other cases where we didn't raise something in a DPC or raise it at all at the IHO level, that if that would be best practices, who could argue that you should address an issue? But at the same time, we litigated this below. This was in a DPC. We did prevail on prong one. But we don't have an SRO decision with respect to it, right? Because the SRO says you waived it. Because even the waiver was raised by DOE, you don't say anything. But it was not, the claim was not abandoned, and I submit was not waived. I know the cases in Kodiak, D.N., Judge Torres and Bofa, those cases talk about when the parent gets all the relief the parent is seeking. If issues aren't addressed before the SRO, they can still be used. But it is peculiar that you do raise some issues, a small one, which I don't give much weight to, and don't raise the one which is the key issue. So there's something slightly inconsistent with saying, ah, I don't need to raise issues because I won, and then I raise one, but not the one that's important, even though I asked you about it. And what I was going to say is, although it's not completely like the other cases, it isn't completely like cases where we don't plead something in the DPC correctly, we don't raise it below, or we don't waive it on appeal when clearly we should. Here, taking that you're not aggrieved because you prevail on prong one could be a mistake, but it's not an abandonment, it's not an affirmative waiver. It's we won on prong one, and we think the IHO got it wrong on prong two. The SRO got it wrong in the first instance. If he got it right, then he would have moved on to the other prongs. But when he found that the parents should have proved that the IEP could have been implemented, by saying it was completely waived, if the, again, he didn't do what the IHO below did. When he found there was a provision of fate, he stopped. At the very least, if he's saying that the other findings were binding, he could have addressed prong two and prong three. And as I said, it's not without its problems. But this Court has said that waivers shouldn't be applied in a mechanical way. And as I said, well, this isn't 100% like those cases where we get everything we want on prong one. It's not quite like cases where you don't raise an issue at all. This was litigated. There was a reason it wasn't raised, because the attorney thought that we were the prevailing party and only an agreed party can raise an issue. That's not an abandonment or an affirmative waiver. And in the context of these cases where the Court has equitable authority, the Court can certainly say this wasn't abandoned, this wasn't waived the way it might be in other cases. And the S.O. should have turned to determine whether the school is appropriate, especially when the appropriateness issue is one that's been litigated in this Court, is before the New York State Court of Appeals. That is, the student had highly intensive management needs and needed a classroom that was smaller than the size that the student got. Thank you. Mr. Bellatoni, you've reserved two minutes for both. Thank you, Judge. Good morning. Good morning, Your Honors, and may it please the Court. I'm Alan Racinus. I represent the appellees, Department of Education, and the DOE Chancellor. Your Honors, on the issue that the one issue that we think is preserved for appeal as to FAPE, which is the issue that the IHO found against the DOE on. First of all, the SRO did not reverse the burden of proof. The burden of proof is on the district, on the DOE for that. But what the SRO said on page 26 of the record is the unit coordinator testified explicitly that the proposed public school could, in fact, provide the related services, either through its own staff or through outside providers. And as the SRO also said, both the case law and to a New York State Department of Education, New York State Education Department memorandum, the other ones, of course, issue a lot of the IDEA regulations in this area. Yes, Your Honor. Let me put the argument for the other side in what might seem to be the strongest. This is an unusually messy case, even for these IDEA cases, because the IHO goes one way and then goes the other way. The SRO does something. There's a suggestion that even though something isn't raised, you might go back and reconsider it, which I think is very interesting. But having said that this key issue isn't raised, they say go back and reconsider it. I don't quite know what anybody was doing here. In the bottom, there is a real issue, the issue of 6 v. 12, and that issue is currently before the New York court. Isn't it just sensible, not in terms of what we are, these aren't waivers but forfeiture and things of that sort, of saying let's wait and see what New York tells us. If New York tells us that, as the state has argued in that case and as you're arguing here, that there's no need to meet both, that's the end of the case. If that instead is not the case, then maybe we just send it back and say to people, knowing now what this key issue is, what about all these other issues on which these people might lose, and do it that way. Isn't that just in terms of the most sensible, equitable way of doing? I'm not saying you don't have arguments about forfeiture and waiver all along the line or decision as to IAP, and we could decide that way. I'm just saying what's a good sense here? Well, Judge Gallagher, I think the answer is, first of all, waiver is a special issue. So if you agree with us that that was one of the issues that was waived, again, I was just addressing the one issue that we think was not waived, but the rest of the faith issues were waived because it wasn't just that they weren't in the parents' appeal. It also wasn't in the parents' answer to the DOE's cross appeal, which explicitly raised the faith point, because that was the basis of the cross appeal was that the IHO got it wrong on the one faith issue. So they could, at that point, raise any arguments in the alternative for affirmance of the IHO's decision on one that they wanted to, and they should have. I mean, the New York State regulation that we quote on page 19 of our brief is very clear that any issues that are not raised either in the appeal or in an answer to a cross appeal are not before the SRO. So if, Your Honor, if you agree with us on that, then the New York State Court of Appeals determination in the Cruz case on the 12-to-1-to-4 or 6-to-1-to-1 issue doesn't matter because this Court wouldn't need to reach the merits. Also, even if you— But then why did they say go back and reconsider? That's what puzzles me. You know, they did say go back and reconsider the size of class when, as you say, there's plenty of law that says, sorry, let's go. Well, I think that's—I mean, I think that the New York State Court of Appeals will make it clear what the answer is under the regulation. And the thing I would add to that is even if the State Court of Appeals decides against us on the legal issue there, there's still another issue, which is whether or not a technical violation of the provisions at issue there rise the level of deprivation of faith if otherwise the offer of faith was substantively adequate, as indeed in that case we think it was. And we argued that that wasn't even before the Court in the circuit because there was admission effectively given what the other side was arguing in that case. But the other thing I would point out, Your Honor, is, again, there's another way to decide this case in our favor without waiting for the State Court of Appeals, which is if you agree with us and with the IHO on prongs two and three, or really prongs two or three, they have to meet all three prongs, then the prong one analysis can just be irrelevant and this Court can avoid reaching it. And the prong two analysis is very clearly in our favor, we think, because the burden on prong two is on the parents and here the plaintiffs. And they did not produce any evidence, any documentary evidence, about the nature of the iBrain program that the student would have received for the 2022 to 2023 school year, which is the school year in question. So, and it's their burden. They only produced one document from 2021. And that was the basis on which the IHO found in our favor on prong two. And Centergram, prong three, they're sort of analyzes together and the District Court did the same. So that's a very clean and very straightforward basis to decide this case without even needing to reach the fake prong, prong one, and that basically saying they did not reach their burden, they did not meet their burden of proof on prong two. And the analysis also on the equities supports us because, you know, they're saying maybe the student attended 50% of the time or so because of this problem with the nurse that iBrain committed to in its IEP. We also had a one-to-one nurse on our IEP. So everyone agrees the student needs a one-to-one nurse, and yet iBrain didn't provide it for a good chunk of the time. But now the parents are here seeking. I have no idea what chunk of time. It's not clear from the record, Your Honor. Yeah, so I don't know. But, again, they're saying something. It seems like it was a lot of time. I mean, Mr. Belentone said she was maybe in school two or three days a week, but maybe it was only 50%. That's a lot of school missed, and yet they're seeking full tuition costs and full transportation costs, even though they admit that she wasn't there a lot of the time, wasn't even taking the transportation. So that goes both to prong three and also to prong two because there's a question of whether or not then the school was able to adequately ensure that the student would likely make educational progress and that the curriculum was tailored to the student's needs. And so the problem there, Your Honor, is that with no documentation about what this program being offered was and no indication that the student was even there that often, there's a prong two problem where they have not met their burden to show that the school was adequate and gave an adequate education to the student on prong two. But just returning briefly to the one issue on faith that we think is preserved, the unit coordinator's testimony on evaluated services. Again, there was no problem. Mr. Belentone says that the SRO shifted the burden proof. I respectfully disagree. The SRO clearly relied on the unit tester's testimony, which was clear on pages 696 to 697 of the record, that the school could have provided related services, including the full 60-minute increments, and said, and I want to respond directly to the idea that the school usually did it in 30 minutes. That's true, but that doesn't undercut what the DOE is saying or what the school was saying or what the unit coordinator was saying because the unit coordinator also testified that the school had accommodated 60-minute related services requirements in the past. That's on pages 698 to 699 of the record. So there's really no problem with respect to the testimony. The IHO said this thing about, well, it can be, there was an implication that the unit coordinator implied that the school would not, might reduce the related services or might not be able to comply. That's not correct. The idea of reevaluating, that's a whole process. That's a formal process. That's where you amend the IEP. That may have happened. It may not have happened. But the school said, the unit coordinator said, we can accommodate this either through staff of our school or related service providers, which is perfectly acceptable, as the SRO said, according to the New York State Education Department. And one final point on that, Your Honors, in the reply brief, the plaintiffs say, well, the court should have deferred or the SRO didn't hear the testimony. The IHO did. And so there should be more deference to the IHO's determination. That's actually not right because this was really a question of the substance of what the unit coordinator testified to. And that's not, it wasn't a credibility determination. It was whether the unit coordinator was implying something through her words. And respectfully, that's not a problem. Really, the answer here is, as in other cases of educational policy, when the SRO's reasoning is thorough, the law is where the SRO and the IHO conflict, that courts defer to the SRO and not the IHO, Your Honors. So we ask that this court affirm the district court. Thank you. We'll hear rebuttal. The court defers to the SRO only where the SRO and IHO have a difference of opinion when it comes to educational expertise. It's like any other appeal. The trier of facts saw these witnesses. Now, perhaps the IHO should have said, you know, straight out, she didn't meet her burden, instead of saying, you know, it seems like, I forget how she phrased it, it doesn't give me confidence that the program can be implemented. But the other thing that was true is it asked again and again if the school would or could implement the IEP as written and provide 60-minute services. She never said yes. That was the issue. The IHO found that she danced around this issue and never answered the question. Their witness. This is not like a case where a parent doesn't go to the school, doesn't talk to anybody, knows nothing about the program, and would have everybody speculate that, you know, you can't get ten classes into a six-hour day. No, this is they called the witness. Now, the fact that she didn't say outright, to me, this is like calling an alibi witness and then asking if you were with the defendant on a night in question, and he said, I don't know. But she's there to prove that they can implement the IEP as written at the school. And she never says that. And when counsel says, well, they could implement it, she testified, if they did one thing or another, that's exactly what this court has rejected. The IEP has to tell the parent how it's going to be implemented. And S.R.O. Bates did something interesting. He cited cases from 2010 and 11 to say that the related service authorizations are perfectly acceptable. But in 2017, Kate James, when she was a public advocate, found that the related service authorizations, like vouchers that were being given out to students, the parents couldn't get people to actually come and provide the services that were supposed to be provided. So these related service authorizations or vouchers were no guarantee of anything. Thank you, Mr. Bellatoni. Thank you, Judge.